```
                                                        FILED
                                                  U.S. DISTRICT COURT
```

IN THE UNITED STATES DISTRICT COURT    2007 FEB 14  A 9: 51
DISTRICT OF UTAH – CENTRAL DIVISION

DISTRICT OF UTAH

BY:_____
      DEPUTY CLERK

| | |
|---|---|
| **U.S. GENERAL, INC., et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**DRAPER CITY, et al.,**<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:06cv488<br><br>Judge Dee Benson |

Two of the defendants in this action, Suncrest, LLC ("Suncrest") and Westerra Management, LLC ("Westerra") have moved this Court to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket #3). The other named defendant, Draper City, has joined in Suncrest's and Westerra's motion. (Docket #23). The above referenced defendants shall hereinafter be referred to collectively as "Defendants."

## BACKGROUND

On June 7, 2006, Judge Ted Stewart of this District Court, dismissed U.S. General, Inc. ("U.S. General"), and the other associated plaintiffs' (collectively "Plaintiffs") claims for violations under Section 2 of the Sherman Act against the Defendants. *See* Memorandum Decision, attached as Exhibit 1 to Defendants' Mem. in Supp. In his memorandum decision, Judge Stewart noted, "Plaintiffs have alleged that the relevant market consists of the development of Traverse Mountain located on the eastern foothills in Salt Lake and Utah Counties. *Id.*, at 7. Judge Stewart ruled that:

> Plaintiffs have failed to plead a relevant market. Plaintiffs have attempted to create
> a relevant market without providing any justification for it... [T]he single

development on Traverse Mountain is too narrowly defined to constitute a relevant market and appears to be an attempt by Plaintiffs to create a relevant market to cover only the practice complained of. Therefore, Plaintiffs first and second causes of action fail here.

*Id.*, at 7-8.

Judge Stewart's dismissal of the antitrust claims was without prejudice, and thereafter, Plaintiffs filed the present complaint on June 16, 2006. In their new complaint, the Plaintiffs have sought to cure the previous defects concerning the relevant market in their prior complaint. To that end, plaintiffs have alleged:

> 35. The relevant market that pertains to Plaintiff's [sic] claims herein is the development of Traverse Mountain located on the eastern foothills in Salt Lake and Utah Counties, Utah…
> 37. Traverse Mountain is unique and unable to be duplicated anywhere along the Wasatch Front, offering an elevation which distinguishes it from all other property for sale along the western side of the Wasatch Front.
> 38. It is the only location along the Wasatch Front where it's homes are primarily located above the winter inversion and summer smog. As such, many home owners have purchased in that area solely for the purpose of escaping health hazards caused by those conditions, creating a unique market which involves only this area. The elevation of this outcropping is approximately 6,500 feet above sea level, while the rest of the Wasatch Front property is approximately 4,300 feet above sea level.
> 39. It is the only location along the Wasatch Front that enjoys views of the Salt Lake and Utah Valleys and provides equal access to both valleys.
> 40. It is the last significant remaining developable area located along the east side of the Wasatch Front. There are simply no other areas that compete with the unique characteristics and location of Traverse Mountain, forming its own market.
> 41. The relevant market for the purposes of this action is Traverse Mountain because as between these parties and the consumers purchasing real estate on Traverse Mountain, there is no substitute or alternative except for SunCrest. Thus, Defendants' monopoly activities are preventing Plaintiffs from offering their product (developed real estate lots) to the consuming public.

Complaint, ¶¶ 35-41.

With respect to a relevant market for developed real estate lots on Traverse Mountain, the Plaintiffs have alleged that the Defendants have conspired to monopolize development of Traverse Mountain in violation of the Sherman Act. Specifically, plaintiffs allege that:

> 24. Defendants' actions serve to prevent the development of surrounding property and to prevent the exercise of free and open commerce by competing, or potentially competing developers keeping hundreds of millions of dollars out of interstate commerce which would have used VA, FHA and other interstate banking, together with interstate title companies if their projects were permitted to be developed.
> 25. Draper City holds a strong bias in favor of the SunCrest developer, to whom Draper City has shown consistent and discriminatory favoritism, and has, by threatening not to sign renewals of the staff's employment contracts, intimidated the staff of Draper City to consistently show favoritism to this developer, thereby allowing development to proceed in violation of city requirements and in a monopolistic manner meant to prevent competition of the area. Draper city demoted its previous City Engineer, and replaced him with an Interim City Engineer. Recently both were fired by Draper City, as they continue to intimidate and eliminate staff in order to continue to show illegal favoritism to the SunCrest Development.
> 26. Conversely, Plaintiff U.S. General, Inc., was forced to surrender land at the base of Traverse Mountain and to pay for and increase utility sizes for the benefit of the SunCrest developer without compensation because Draper City at the time, said these costs would be for the benefit of not just the SunCrest Developer, but for all residents via "shared community" services. Plaintiff U.S. General, Inc. was also forced by the City of Draper to pay in advance the construction of a community water tank at the foothills of Draper and it was from that process, Plaintiff likewise believed what was good for his development and adjacent property owners developments, should be good for the SunCrest Developer and their fellow property owners who also would like to develop their properties.
> 27. Presently, the City of Draper has no incentive, nor has it ever made a demand on the SunCrest Developer to construct adequate water service, including water tanks and water lines. There cannot be any community services without Draper City's directive to SunCrest to provide such infrastructure. SunCrest has no incentive to build reimburseable community services because it would create competition.
> 28. It was learned during the discovery process in a separate legal proceeding between Plaintiffs and Draper City that Draper City has met secretly and without proper notice with the SunCrest Developer.
> 29. During the secret meetings between Draper City and the SunCrest Developer, the parties agreed to create protection strips that would effectively limit and restrict Plaintiffs access to Plaintiffs' property.

30. The predatory and exclusionary practices of Draper City have escalated to such extremes that the Draper City Manager recently resigned as a result of the extreme favoritism shown by Draper City toward the SunCrest Developer.

Complaint, ¶¶ 24-30.

In support of these allegations, Plaintiffs have submitted four exhibits in an effort to substantiate their claims. The first exhibit includes a warranty deed and slope easement agreement executed by Suncrest for its property. The second exhibit is a print-out of the Suncrest website with the denotation "copyright 2002 Westerra Management, LLC" circled. The third exhibit is a letter to Eric Keck, Draper City Manager, from Ed Grampp, Vice President of Suncrest. In the letter, Mr. Keck describes Suncrest's intention to construct certain water system improvements and notes that "[t]hese improvements are being sized for the sole use of the SunCrest Master-Planned community and will not generate capacity sufficient for use by any other development." Exhibit 3, Plaintiffs' Mem. in Opp. The fourth exhibit is an email from Mr. Keck to David Mast. At the time Mr. Keck wrote the email, he was no longer employed as Draper City's Manager. In the email, Mr. Keck attempts to answer certain questions for Mr. Mast. For example, Mr. Keck states that Suncrest was tired of "being the bank for the city with the infrastructure on Traverse Mountain." Exhibit 4, Plaintiffs' Mem. in Opp. Mr. Keck also states that Hidden Canyon Estates "would need to acquire its water through Draper City as it falls within the City's Franchise boundary." *Id.*

Defendants have moved for dismissal based on Plaintiffs' failure to plead a relevant market and for protection under the *Noerr-Pennington* doctrine. For the reasons described below, the Court hereby GRANTS defendants' motion to dismiss.

## ANALYSIS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is granted if the plaintiff "can prove no set of facts to support a claim for relief" consistent with the contents of the pleadings and the relevant law. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995).

The Sherman Act states:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.

15 U.S.C. § 2. "The two elements required to maintain a section 2 monopoly claim are: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *TV Comm. Network, Inc. ("TVCN") v. Turner Network Television, Inc. ("TNT")*, 964 F.2d 1022, 1025 (10th Cir. 1992) (citations omitted). The Tenth Circuit has stated, "[a] complaint is subject to dismissal where it does little more than recite the relevant antitrust laws." *Moshe Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citations omitted). "Bare bones accusations of a conspiracy without any supporting facts are insufficient to state an antitrust claim." *Id.* "Moreover, the use of antitrust 'buzz words' does not supply the factual circumstances necessary to support … conclusory allegations." *Id.* (citations omitted).

The Defendants argue that Plaintiffs' claims fail on three grounds: (1) they haven't pled a recognizable market, (2) they haven't pled harm to competition, and (3) they are not participants in the housing market.

### I. Plaintiffs have Failed to Plead a Relevant Market

The first step in an antitrust analysis is defining the relevant market or markets. *See Brown Shoe, Co. v. U.S.*, 370 U.S. 294, 325 (1962). A relevant market must be defined by "the interchangeability of use or the cross-elasticity of demand between the product in question and substitutes for it." *Id.*

Defendants argue that the land on Traverse Mountain does not constitute an economic market for purposes of an antitrust violation. Defendants rely on authority from the Tenth Circuit, who has ruled that "a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product." *TVCN v. TNT*, 964 F.2d at 1025. In *TVCN v. TNT*, the plaintiffs alleged that "TNT monopolized the market for the TNT channel in Metropolitan Denver. TVCN claims TNT has complete control of the TNT channel market with a 100% market share." The Tenth Circuit, however, ruled that because TNT owned the TNT channel, it could not be sued for monopoly of a product it owned and developed. Similarly, Suncrest argues that the Plaintiffs are claiming that Suncrest is monopolizing the land it owns on Traverse Mountain.

Plaintiffs counter that their claims are distinguishable from those in *TVNC v. TNT* because the whole of Traverse Mountain (including the land owned by some of the Plaintiffs) constitutes the relevant market, not just the property owned by Suncrest. The Plaintiffs seem to argue that Suncrest and Westerra have monopolized the Traverse Mountain land market by conspiring with Draper City to control the water supply. This argument, however, is insufficiently supported by allegations of fact. First, the Plaintiffs have not made any factual allegations or brought forward evidence that the Defendants were required by Draper City to provide a water system for all landowners in the area. Without such evidence, the Defendants' actions with respect to their land

and their water supply are more in keeping with TNT's control of its own television station. The Tenth Circuit insulated control of a party's own assets from antitrust claims in *TVCN v. TNT*. Absent some factual allegation or evidence that the Defendants were required to provide water services (or some amenity) for the benefit of all landowners on Traverse Mountain, Plaintiffs fail to state a claim under the Tenth Circuit standard announced in *TVCN v. TNT* and their claims should be dismissed.

## II. Additionally, Both Suncrest's and Westerra's Actions are Protected by the *Noer-Pennington* Doctrine

The *Noerr-Pennington* doctrine "exempts from antitrust liability any legitimate use of the political process by private individuals, even if their intent is to eliminate competition." *Moshe Tal v. Hogan*, 453 F.3d 1244, 1259 (10th Cir. 2006) (citations omitted). "The doctrine is grounded in the First Amendment and arises from the Supreme Court's conclusion that the Sherman Act was not intended to derogate the First Amendment right of citizens to petition the government for a redress of grievances." *Id.*

There is, however, an exception to *Noerr-Pennington* immunity. "[T]his immunity does not encompass fraudulent or illegal actions." *Id.*, at 1260. However, "to establish fraud or illegality, there must be more than a mere allegation of a 'conspiracy'." *Id.* The Tenth Circuit also noted that "[i]t would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became ... co-conspirators in some sense with the private party urging such action." *Id.*

Defendants argue that the present case is analogous to *Moshe Tal*. In *Moshe Tal*, the Tenth Circuit held that the developers' allegations of "bid-rigging" were not sufficient to remove the

defendants from the protection of the *Noerr-Pennington* doctrine. *Id.* The Tenth Circuit stated, "The Developers, even though potentially acting with anticompetitive intent, are covered under the Noerr-Pennington doctrine unless there is some colorable claim of fraud or illegality." *Id.* The Defendants argue that Plaintiffs' allegations of a conspiracy, absent some substantiating facts, does not sufficiently state a colorable claim of fraud or illegality to remove the protection of the Noerr-Pennington doctrine.

Plaintiffs claim that they have made allegations of fraud and illegality within their conspiracy claims. However, the Plaintiffs' argument is unsupported. It is difficult to divine anything approaching the kind of fraud or illegality anticipated by the *Moshe Tal* analysis from Plaintiffs' allegations in the complaint and from their later submissions. While they allege violations of Utah's Open and Public Meetings Act, and a failure to follow Utah's GRAMA Act, these allegations rest primarily against Defendant Draper City. It would require a most strained interpretation of the *Noerr-Pennington* doctrine and of *Moshe Tal* to allow these types of alleged illegal acts to satisfy an exemption from the doctrine to the Plaintiffs in this case. Without more to substantiate Plaintiffs' claims of fraud or illegality, the Suncrest and Westerra defendants are shielded by the *Noerr-Pennington* doctrine.

### III. Plaintiffs have Failed to Plead Harm to Competition

Even if the Plaintiffs had established a relevant market for antitrust purposes, they have failed to plead harm to the competitive process sufficient to sustain an antitrust claim. The Plaintiffs' allegations of a conspiracy between Suncrest, Westerra and Draper City do not constitute an appropriate allegation of harm to competition to support an action under 15 U.S.C. § 2, but merely harm to the Plaintiffs themselves. An antitrust claim requires harm to the competitive

process, not simply harm to a particular competitor. *See Brunswick Corp. v. Pueblo Bowl-O-mat, Inc.*, 429 U.S. 477, 488 (1977) (*citing Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED and the Plaintiffs' claims are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED this 13th day of February, 2007.

*[signature: Dee Benson]*

JUDGE DEE BENSON
District Court Judge